UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JULIA O'CONNELL,

        Plaintiff,

v.                                                                                 Case No. 07-C-637

NORTHLAND LUTHERAN RETIREMENT
COMMUNITY, EMPLOYEE HEALTH PLAN,
NORTHLAND LUTHERAN RETIREMENT
COMMUNITY, INC., and PROFESSIONAL BENEFIT
ADMINISTRATORS, INC.,

        Defendants.

## DECISION AND ORDER

        On July 10, 2007, Plaintiff Julia M. O'Connell filed this suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, alleging that she was denied benefits to which she is entitled under the employee health plan provided by her employer, Edgewood Manor, Inc. Health benefits for employees of Edgewood Manor, an affiliate of Northland Lutheran Retirement Community, Inc. ("NLRC"), were provided under the Northland Lutheran Retirement Community Employee Health Plan ("Plan"), a self-funded employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1). O'Connell claims she incurred more than $22,000 in health care costs back in 2003 that the Plan has refused to pay. In addition to payment of the benefits allegedly due under the NLRC Plan, O'Connell claims she is entitled to sanctions pursuant to ERISA § 532(c)(1)(B) because NLRC initially failed to provide her a copy of the Plan and summary plan description upon her request.

NLRC and the Plan seek summary judgment dismissing O'Connell's claim for benefits on the grounds that she (1) failed to exhaust her administrative remedies; and (2) failed to provide requested information concerning her claims. As to O'Connell's claim for sanctions, NLRC argues that it did not violate ERISA § 502(c)(1)(B) because O'Connell was not a participant in the Plan at the time she made her request for information. NLRC further argues that this is not an appropriate case for sanctions in any event.

Having considered the briefs and arguments of counsel, I now conclude that the Defendants' motion for summary judgment should be denied. O'Connell's motion to compel discovery, filed along with its response to NLRC's motion for summary judgment, will also be denied.

## BACKGROUND

On April 13, 2002, while traveling abroad in Costa Rica, Julia M. O'Connell suffered serious arm and shoulder injuries as a result of an automobile accident. (Pl.'s Resp. to DPFOF and Addl. PFOF 14.) As a result, O'Connell spent ten days in a Costa Rican hospital followed by in-home nurse care (in Costa Rica) for a period of four months. (Morrison Decl., Ex. B, p. 2.) Following her return to the United States, O'Connell underwent additional treatment for her injuries at the Mayo Clinic and St. Mary's Hospital in Rochester, Minnesota in the fall of 2002. (Pl.'s Resp. to DPFOF and Addl. PFOF ¶ 15.) She underwent still further treatment at Mayo and St. Mary's during the summer and fall of 2003. It appears that the charges for the second round of treatment are the subject of the dispute between the parties.

At the time of the accident, O'Connell was employed by Edgewood Manor, Inc., an affiliate of NLRC, which operates a group home for developmentally disabled adults. She was covered by the self-funded employee health care benefit Plan maintained by NLRC. (DPFOF ¶ 1; Jt. Stip. of

2

Facts ¶ 1, Ex. A.) Although O'Connell later lost her job because she was no longer able to perform her duties, her coverage under the Plan continued until late 2003. (Defs.' Reply Statement of PFOF and to Pl.'s Addl. PFOF 2.) NLRC was the Administrator of the Plan, but Professional Benefit Administrators, Inc. ("PBA"), was retained as the claims administration processor until NLRC terminated PBA's services on December 31, 2003, and replaced it with Midwest Security as its claims administrator. (DPFOF ¶ 3.)

The Plan contained several provisions that are relevant to the issue before the Court. Under the terms of the Plan, PBA was to determine whether enough information was submitted to enable proper consideration of the claim. If not, the Plan provided that PBA could request additional information and, further, that failure to provide the requested information could result in claims being denied or reduced. (Jt. Stip. ¶1, Ex. A at 39.) The Plan also contained detailed provisions governing the Plan's right to recover through subrogation or reimbursement benefits paid for injuries caused by third parties. It required claimants to cooperate in the Plan's efforts to recover such payments by assigning their rights to the Plan and agreeing to reimburse the Plan for amounts recovered by the claimant. (*Id.* at 34-35.)

Finally, the Plan provided for two levels of appeal from an adverse claim determination. To obtain review at the first level, the claimant was required to file an appeal in writing within 180 days following receipt of an adverse benefit determination. If not satisfied with the Plan's determination on the first appeal, the claimant was required to file a second appeal in writing within sixty days of notice of the adverse decision on the first. (*Id.* at 43-47.) The decision of the Plan Administrator or other appropriate named fiduciary of the Plan on the second appeal was to be "final, binding and conclusive and will [be] afforded the maximum deference permitted by law." (*Id.* at 47.) The Plan provided that "all claim procedures provided for in the Plan must be exhausted

3

before any legal action is brought." (*Id.*) Any legal action for the recovery of benefits was required to be commenced within one year after the Plan's claim review procedures were exhausted. (*Id.*)

O'Connell's medical providers (Mayo Clinic and/or St. Mary's Hospital) timely submitted the disputed medical claims on O'Connell's behalf to the Plan through its claims administrator, PBA for services provided between June 24 and November 7, 2003. (DPFOF ¶ 4; Jt. Stip. ¶4, Ex. D.) For purposes of this summary judgment motion, "the parties have stipulated that the medical providers submitted itemized statements [to PBA] requesting payment of approximately $20,235.86." (Jt. Stip. ¶ 3, Table 1, Ex. C.) In response to the submitted claims, PBA sent O'Connell a series of "Explanation of Benefits" ("EOBs") forms which stated: "Accident information requested under separate cover has not been received. Until this information is received in our office, no further action may be taken." (Jt. Stip. ¶ 4, Ex. D.) NLRC contends that the EOBs refer to a November 3, 2003 letter PBA sent to O'Connell with an enclosed form requesting additional information regarding the submitted charges and a Third Party Liability Reimbursement Agreement. (Michaelis Aff. ¶ 6, Ex. A.) It was O'Connell's failure to respond to the letter, NLRC contends, that led to the nonpayment of which she now complains. Since she failed to provide the requested information and also failed to exhaust her administrative remedies under the Plan, NLRC argues that O'Connell's claim for benefits must fail.

O'Connell, on the other hand, denies that she ever received PBA's November 3, 2003 letter requesting additional information. Even aside from this, however, she contends that she had already provided PBA the information it was seeking in its November 3, 2003 letter nearly eight months earlier on March 13, 2003. (Pl.'s Br. In Opp'n to Defs.' Mot. For Summ. J. ¶ 2; Morrison Decl. ¶ 3, Ex. B.) At that time, Attorney James Morrison, acting as a friend to O'Connell, had written to PBA explaining the circumstances of the April 13 accident in Costa Rica and providing

4

the name of the Costa Rican attorney she had retained to pursue her claim against the driver of the other car. Attorney Morrison also enclosed PBA's form requesting information concerning the accident and a copy of its Third Party Liability Reimbursement Agreement with Ms. O'Connell's signature. However, Attorney Morrison's letter appears to have been in response to an earlier request for information made in reference to the medical care O'Connell had received in the fall of 2002. PBA's letter of November 3, 2003, sought further information about the claims for benefits arising out of the treatment O'Connell received in 2003, apparently because it did not realize the treatment was for the same injuries O'Connell sustained in the April 2002 accident.

O'Connell also claims she and her health care providers spoke with Darrell Lancour, NLRC's Director of Human Resources, regarding the unpaid benefits on numerous occasions between November of 2003 and October of 2006. (Pl.'s Resp. to DPFOF and Addl. PFOF ¶ 20.) O'Connell claims that Lancour continually provided assurances that he "would look into the problem or take care of the problem or NLRC would pay the claims." (Decl. of Julia O'Connell ¶ 11.) Lancour admits he told O'Connell he would look into the problem but denies that he ever told O'Connell or others calling on her behalf that he would take care of the problem or that NLRC would pay the outstanding claims. (Aff. of Darrell Lancour ¶¶ 4, 5.) O'Connell further states that in October 2006, Lancour orally informed her that NLRC's board had voted to deny her claims, a claim Lancour also denies. (Pl.'s Resp. to DPFOF and Addl. PFOF ¶ 25; Lancour Aff. ¶ 6.) Following her communication with Lancour, O'Connell states she spoke with Reverend Kenneth Michaelis, President and CEO of NLRC. O'Connell claims that Reverend Michaelis also told her that NLRC's board voted to deny her claims (Pl.'s Resp. to DPFOF and Addl. PFOF ¶ 30), a claim Michaelis also has denied, stating "[t]he only consideration of Ms. O'Connell's claim occurred after [she] filed a complaint and began this litigation." (Michaelis Aff. ¶ 4.)

5

O'Connell argues that because neither the EOBs sent by PBA, nor the oral notification of denial she received from Lancour and Reverend Michaelis, comply with ERISA's requirements for notifying a plan participant of the denial of a claim, she is deemed to have exhausted her administrative remedies as a matter of law and is entitled to de novo review of her claim. She also contends that her previous response to PBA's request for information provided PBA with all of the information it needed or sought. NLRC's motion for summary judgment on her claim for benefits, O'Connell argues, must therefore be denied.

As to her claim for sanctions, O'Connell notes that ERISA requires a plan administrator, "upon written request of any participant or beneficiary, [to] furnish a copy of the latest updated summary, plan description . . . or other instruments under which the plan is established or operated," and authorizes the imposition of a sanction of "up to $100 per day" for an administrator who fails to furnish such information within thirty days of the request. (Pl.'s Br. In Opp. at 12 (quoting 29 U.S.C. §§ 1024(b)(4), 1132(c)(1)).) Moreover, she argues, the obligation to furnish such information extends to former employees with colorable claims. Since it is undisputed NLRC failed to timely furnish her with the Plan documents she requested, O'Connell argues dismissal of her claim for sanctions would be clearly improper.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of

6

demonstrating that it is entitled to summary judgment. *Id*. at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id*. at 322-24.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a genuine issue of material fact for the case to survive. *Id*. at 247-48. "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997).

A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. Therefore, summary judgment is appropriate against a party who, after adequate time for discovery and in the face of a properly supported summary judgment motion, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322.

**ANALYSIS**

NLRC argues that it is entitled to summary judgment dismissing O'Connell's claim for benefits because she failed to exhaust the administrative remedies provided by the Plan. NLRC notes that the Plan explicitly requires a claimant to exhaust the claim review procedures before

commencing litigation. (Jt. Stip. Ex. A at 47.) Even without such a provision, however, ERISA plaintiffs are required to exhaust "ERISA-required internal remedies." *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 873 (7th Cir. 1997). The exhaustion requirement furthers the "goals of minimizing the number of frivolous lawsuits" and enables the preparation of a more complete factual record for judicial review. *Gallegos v. Mt. Sinai Medical Center*, 210 F.3d 803, 807-08 (7th Cir. 2000). By promoting a non-adversarial dispute resolution process, the exhaustion requirement also decreases the cost and time of claims settlement. *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996). NLRC argues that because O'Connell failed to comply with this requirement, her claim for benefits must be dismissed.

There are two exceptions to the exhaustion of remedies requirement. A claimant need not exhaust his administrative remedies (1) if there is a lack of meaningful access to review procedures, and (2) if pursuing internal remedies would be futile. *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231 (7th Cir. 1997). O'Connell does not contend that pursuing the NLRC Plan's administrative remedies would have been futile in this case. Instead, she argues that PBA failed to comply with ERISA regulations governing claims procedures. As a result, she contends that she was denied meaningful access to review procedures and must be deemed to have exhausted her administrative remedies as a matter of law.

> ERISA requires that every employee benefit plan:
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

8

29 U.S.C. § 1133. The Secretary of Labor has adopted regulations that set forth the minimum requirements for notifying a claimant of an adverse benefit determination. The regulations require the plan administrator to provide the claimant with written or electronic notification of any adverse benefit determination. 29 C.F.R. § 2560.503-1(g). In addition, the notification must set forth, *inter alia*, and "in a manner calculated to be understood by the claimant" the following information:

> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;
>
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

*Id.* If a plan fails to establish or follow a claims procedure that complies with the regulation, the claimant is "deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503-1(l).

Pointing to the alleged oral notification of NLRC's denial of her claim by Lancour and Reverend Michaelis, O'Connell first argues that NLRC's handling of her claim fell far short of what ERISA mandates for notification of adverse benefit determinations. Because the oral notification they gave her did not provide her notice of any of the information required by 29 C.F.R. § 2560.503-1(g), O'Connell contends that she had no meaningful opportunity to appeal the decision and was denied meaningful access to review. (Pl.'s Br. Opp. at 7-8.)

9

Of course NLRC does not argue that the alleged oral statements of either Lancour or Reverend Michaelis met the requirements of 29 C.F.R. § 2560.503-1(g). Indeed, both Lancour and Michaelis deny that they had any role in the handling of O'Connell's benefit claim. They specifically deny they provided her notice that her claim was denied. Instead, NLRC contends that it is the EOBs sent to O'Connell by PBA in response to the claims submitted on her behalf by Mayo Clinic and St. Mary's Hospital that constitute the written adverse determinations required by ERISA. Thus, the issue before the Court is whether those EOBs comply with § 2560.503-1(g).

O'Connell argues that the EOBs did not comply with § 2560.503-1(g) in several respects. First, she argues that the EOBs did not even inform her that her claims had been denied. A letter informing a claimant that no further action can be taken on a claim until additional information is received, she notes, is not an adverse determination. (Pl.'s Br. In Opp'n at 8.) O'Connell also contends that the EOBs failed to comply with § 2560.503-1(g) in that they failed to set forth the specific reason for the adverse determination, a reference to the specific plan provisions on which the determination was based, or a description of any additional information necessary for O'Connell to perfect her claim along with an explanation of why the information was necessary in violation of 29 C.F.R. § 2560.503-1(g) (i), (ii), and (iii). (*Id.*) As a result, O'Connell claims she was "left completely in the dark" as to why PBA did not process her claims. (*Id.* at 9.)

In response to O'Connell's contention that the EOBs did not constitute an adverse determination of her claims, NLRC notes that the regulations define an "adverse benefit determination" as any "denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit . . . ." 29 C.F.R. § 2560.530-1(m)(4). NLRC also notes that in this circuit, strict compliance with ERISA regulations is not required; "substantial compliance with

10

the regulations is sufficient." *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 180 (7th Cir. 1994). Moreover, the regulations require that the specific reason for the denial be given, not "the reasoning behind the reasons." *Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1996). The reason stated is sufficient if it, "under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review." *Halpin v. W.W.Grainger, Inc.*, 962 F.2d 685, 690 (7th Cir. 1992).

Based on these principles, NLRC contends that the EOBs substantially complied with § 2560.530-1(g). The EOBs notified O'Connell that the Plan had failed to pay the claims, which constitutes an adverse benefit determination under the regulation. *See* 29 C.F.R. § 2560.530-1(m)(4). The EOBs also informed O'Connell that the reason for the adverse determination was that PBA had not received the information it requested under separate cover. Even assuming, as O'Connell claimed, that she had not received the November 3, 2003 letter from PBA requesting additional information, NLRC contends that the information contained in the EOBs was sufficient to apprise O'Connell of the reason her claim was not being paid. This is especially true, NLRC argues, in light of the fact that O'Connell had already responded to such a request in connection with the previous round of treatment. A footnote directed O'Connell to contact PBA's Customer Service Department at the number listed if she could not find the relevant provision in the Summary Plan Description. Finally, NLRC notes that the bottom of the form described the claimant's appeal rights. This information, NLRC contends, was more than sufficient to advise O'Connell of the adverse benefit determination and provide the additional information required by § 2560.530-1(g).

Having considered the arguments of counsel, the Court is unconvinced that NLRC provided O'Connell with notification of an adverse benefit determination "in a manner calculated to be

11

understood by the claimant." The language of the EOBs did not adequately inform O'Connell that her benefit claim was denied. Indeed, the EOBs implied that no action had been taken and, further, that no action would be taken "until this information is received in our office." (Jt. Stip., Ex. D.) Requesting further information and taking no action is not the same as a denial. *See Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d at 1237 (holding that letter requesting additional examination not a denial); *Daill v. Sheet Metal Workers' Local 73 Pension Fund,* 100 F.3d 62, 66 (7th Cir. 1996) (holding that a claim for ERISA benefits "accrues upon a clear and unequivocal repudiation of rights under the pension plan which has been made known to the beneficiary"). That an ERISA regulation includes "a failure to . . . make payment" within the definition of the phrase "adverse benefit determination" does not help NLRC's argument. A regulation defining the phrase is of no assistance to a claimant who has no idea that such a regulation even exists. If the administrator intends the time for an administrative appeal to run from the time the claimant is advised of the need for further information, he should so state in the EOB. To simply state no further action will be taken until the requested information is received fails to convey the urgency that an unequivocal denial would convey. A statement on the face of the EOB to the effect that a request for further information should be treated as an adverse benefit determination in the event the information is not timely provided would at least alert the claimant to the need to file an appeal in writing within 180 days if she wasn't going to respond.

A further difficulty arises when one considers the letter requesting the additional information that NLRC claims that PBA sent to O'Connell on November 3, 2003. Designated "second request," the letter references an April 30, 2003 accident. (Michaelis Aff. Ex. A.) But there is no record of any report of an accident in 2003. Moreover, NLRC has provided no

12

documentation substantiating PBA's first request, unless PBA was referring to the request Attorney Morrison had responded to eight months earlier, in which case it would appear it already had the information it was requesting. More importantly, the letter states that if no response is received soon, PBA will suspend its file on the claims, but then goes on to state that "[i]f the required information is received within twelve months of the date of service, we will gladly reopen our file and give prompt consideration to the charges." (*Id.*) Of course, O'Connell denies ever receiving the November 3 letter. But the fact that PBA agreed to reopen its file and consider the claim if a response was received within the year is inconsistent with NLRC's contention that the EOBs that O'Connell received shortly thereafter triggered the 180-day appeal time. The letter raises the question whether even PBA believed the EOBs constituted adverse benefit determinations.

Finally, it is important to note the O'Connell's confusion would not have been alleviated by the responses of Lancour, NLRC's Director of Human Resources, to her inquiries. Viewing the evidence in the light most favorable to the non-movant as the Court must at this stage of the proceedings, *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008), it appears that O'Connell complained to Lancour that her claims were not being paid and was told that NLRC was terminating its relationship with PBA. (O'Connell Decl. ¶¶ 7-8.) According to O'Connell, she requested that NLRC pay her outstanding claims on numerous occasions between November 2003 and October 2006, and was told by Lancour that he would look into it. (*Id.* ¶¶ 9-10.) O'Connell claims that Lancour assured her and her health care providers that he would take care of the problem or that NLRC would eventually pay the claims. (*Id.* ¶ 11.) Although Lancour denies telling O'Connell or anyone calling on her behalf that he would take care or it or the NLRC would pay, he does admit that she spoke with him about the problem on a number of occasions and he told her he would look into it. (Lancour Aff. ¶¶ 2-4.) Significantly, however, it appears Lancour

13

never told O'Connell that she should treat the EOBs as a denial or directed her to appeal PBA's failure to pay.

Under these circumstances, the Court is not convinced that NLRC substantially complied with 29 C.F.R. § 2560.530-1(g). The undisputed evidence does not establish that NLRC provided O'Connell "in a manner calculated to be understood by the claimant" notice that her claims had been denied so that she realized the need to appeal. NLRC's motion for summary judgment as to O'Connell's claim for benefits on the ground that she failed to exhaust her administrative remedies will therefore be denied. And because O'Connell claims not to have received PBA's November 2003 letter requesting additional information, NLRC's motion for summary judgment on her benefits claim on the further ground that O'Connell failed to provide information requested by the Plan will be likewise denied. There remains the question of O'Connell's claim for sanctions.

O'Connell seeks a sanction of $100 per day against NLRC for its failure to provide her with the Plan document on her request. ERISA provides that a plan administrator must, "upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description . . . or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). The Act authorizes the Court to impose a sanction of up to $100 per day on a plan administrator who fails to provide such information within 30 days of a request. 29 U.S.C. § 1132(c)(1). That O'Connell made a written request for Plan documents on February 2, 2007, is undisputed. Also undisputed is the fact the NLRC initially told her that it could not locate a copy of the Plan and had no reason or obligation to retain it. (O'Connell Aff. ¶¶ 23-24, Ex. E, F.) In fact, ERISA requires employers to retain such records for at least six years. 29 U.S.C. § 1027. NLRC finally furnished her with a copy of the Plan on September 6, 2007, two months after she filed suit. NLRC argues that O'Connell's claim for sanctions should be dismissed because she was

14

not a participant in the Plan at the time her request for Plan documents was made. (Br. Supp. Mot. for S.J. at 20.) But as O'Connell points out, ERISA defines participant as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from any employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7). The Supreme Court has noted that a former employee qualifies as a participant if she has "a colorable claim that . . . she will prevail in a suit for benefits[.]" *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989). And the Seventh Circuit has held that "the requirements for a colorable claim are not stringent; a plaintiff need have only a nonfrivolous claim for the benefit in question." *Kamler v. H/N Telecommunications Services, Inc.*, 305 F.3d 672, 678 (7th Cir. 2002). From this authority, it follows that O'Connell was a participant within the meaning of ERISA at the time she requested Plan documents from NLRC.

NLRC also argues, however, that sanctions are not appropriate in this case in any event given the lapse in time between when O'Connell left her employment and when the request was made, as well as the age of her claims. NLRC also argues that the facts that only one request was made, the Plan at issue had terminated, it did not act in bad faith, and O'Connell suffered no prejudice also support dismissal of the claim for sanctions. Under these circumstances, NLRC contends the imposition of sanctions would be improper.

Many of the factors cited by NLRC suggest that sanctions are not appropriate in this case. But the record is not sufficiently clear to permit such a determination on summary judgment. The record is not clear whether NLRC acted in bad faith in failing to respond to O'Connell's request. The fact that NLRC first told her that it had not retained a copy and only furnished her a copy after she retained counsel and filed suit could support an inference of bad faith in the absence of evidence to the contrary. Whether there was bad faith or intentional conduct on the part of the administrator

15

is certainly one of the factors the Court should consider in deciding a claim for sanctions. *Romero v. SmithKline Beecham*, 309 F.3d 113, 120 (3d Cir. 2002). Under the circumstances of this case it is perhaps the most important. Since the record is not yet fully developed on the issue, summary judgment would be inappropriate.

Finally, O'Connell has filed a motion to compel NLRC to answer her interrogatory advising her of any and all substantive reasons for denying her claims. More specifically, O'Connell asked NLRC to "state the reason(s) benefits were not paid in full (including citation to all sections of the Plan supporting the decision not to pay in full)" with respect to each of the claims at issue. (Schmidt Decl. ¶ 3, Ex. G at 2.) NLRC has objected to the interrogatory on several grounds, including that discovery in the case had been limited to the administrative record, but contends that it has answered the interrogatory in as much detail as its present knowledge allows. Based on NCLR's representation that it has fully answered O'Connell's interrogatory, the motion to compel will be denied. However, now that NLRC's motion for summary judgment seeking dismissal for failure to exhaust has been denied, it is appropriate that NLRC supplement its answer to O'Connell's interrogatory if further discovery reveals additional defenses it intends to assert.

Accordingly and for the reasons set forth above, NLRC's motion for summary judgment (Doc. # 19) and O'Connell's motion to compel (Doc. # 26) are denied. The clerk shall set this matter on the Court's calendar for further scheduling.

**SO ORDERED** this   15th    day of July, 2008.

     s/ William C. Griesbach
     William C. Griesbach
     United States District Judge